Judge Marshall
delivered the Opinion of the Court.
This case originated in a warrant brought by Sheely against Bryant, to recover the price or value of a horse purchased by Bryant from the slave of Sheely, after Bryant had obtained the written permission of Sheely to trade with said slave. The justice of the peace gave judgment for the defendant in the warrant. But upon the appeal of the plaintiff to the Circuit Court, a verdict and judgment were rendered in his favor, for twenty seven dollars and fifty cents. To reverse which, Bryant prosecutes a writ of error.
On the trial, the written permission of Sheely, as above stated, was produced and read; and it was proved that the slave, as the witnesses understood, was trading or dealing for himself, by the allowance of his master, when he sold the horse to Bryant; there was no proof of payment, nor any proof of the price agreed on, but inference arising from the value of the horse.
The Court instructed the jury that, if the vendor of the horse was, at the time of the sale, the slave of Sheely, they should find for the plaintiff; and also, that if the Price the horse remained unpaid, they should find for the plaintiff. The only question now to be determined, is whether either or both of these instructions were erroneous.
The law does not protect, nor indeed acknowledge, in a slave any right of property; but adjudges the master to he the owner of all his acquisitions, whether by gift, or by the earnings of his labor. Consequently, the master, and he alone, can sue for any property thus acquired, or for its value, or for an injury to it. The statute of 1829, section 12 (Stat. Law, 1474,) inflicts a heavy *531 penalty upon any one who shall buy or receive any commodity from a slave, without the written consent of the master, expressive of the article permitted to be sold by the slave. Certainly, the purchase of property from a slave, in violation of the provisions of this statute, though it be unlawful in the purchaser, cannot deprive the master of his right of property, or of action. And therefore, if the commodity be sold without his consent, he may sue for and recover it, or if, by consenting to or ratifying the sale, he deprive himself of the right of property, and affirm the contract made by the slave, he may doubtless maintain an action for the recovery of the price or value of the thing sold, if payment be not already made to the slave, and affirmed by the master’s consent to, or ratification of, the contract.
A slave, being authorized by his master to sell any particular thing, becomes the agent of his master for that purpose; and from the authority to sell, an authority to transfer the property, and to fix and receive the price, must be inferred; but the slave cannot exercise or receive an authority to maintain any action in relation to it: the right of action for the price, belongs to the, master; and if he sues, that fact is itself sufficient evidence, that he authorized, or approved and confirmed the sale: and consequently, he can recover no more than the agreed price, where there was an agreement made with the slave; the actual value, where there was no agreement. So—
*531 A general, license or permission for a slave to go about and trade as a freeman is against the policy of our laws, and the fourteenth section of the act above referred to (Stat. Law, 1474,) subjects the master or owner who shall give such general license or permission, to a penalty. The owner who should violate this prohibition of the statute, would lose all right of action for the earnings of his slave acquired under such an unlawful permission to go about and trade as a freeman. But the owner may, without violation of law, permit any single purchase or sale by his slave, and although the purchaser from the slave is subjected to a penalty, unless the permission be in writing, referring expressly to the article allowed to be sold, yet, we apprehend that, so far as the transfer of property, and the right of recovering its value, are concerned, the sale is valid by the mere consent of the master, who is in law, the owner of the property; and that it is immaterial whether that consent be in writing or by parol, or whether it be given before or after the sale.
A slave, so far as he is authorized to deal in property, acts, in judgment of law, as the agent of his owner, and for his benefit. If he make a sale by authority, the master thereby loses all right to the thing sold, and acquires a legal right to the price agreed on. He’may authorize his slave to sell particular articles, and this is an authori *532 ty to transfer the property, and to fix upon and receive the price. But he cannot authorize the slave to coerce the payment of the price. And the promise to pay it being, in judgment of law, for the benefit of the master, to whom the property belonged, may be coerced by him, as a promise to pay for his property sold by his agent. And as the master may, by subsequent consent, affirm the sale made by his slave, as he might affirm a sale made by any other person acting as his agent, and as he has no right to bring the action of assumpsit for the price or value of the thing sold, but in pursuance of a contract, express or implied, we are of opinion that the fact of bringing such an action is itself a confirmation of the sale, and an acknowledgment of the authority of the agent; and that, therefore, the plaintiff in such action can only recover the price agreed to be paid for the property. Although, therefore, the written permission does not expressly refer to the horse, we are of opinion that taking the writing in connection with the bringing of this action, the sale must be considered as valid by the consent of the master.
Held, that where a party, after obtaining the written authority of a master to trade with his slave, bought a horse from him,and the master afterwards brought suit against the purchaser , for the price or value of the horse—he may recover, unless the purchaser shows that he has paid the slave—which payment would constitute a good defence to the action.
It follows from this view of the subject, that if the price agreed on was not paid to the slave who made the sale, his master had a right to recover it, and therefore, the second instruction was proper. But it is equally manifest that if the price had been paid, it could not be recovered by the master; and therefore, the first instruction, as it left this fact out of view, and placed the right of recovery upon the single question of the plaintiff being the owner of the slave at the time of the sale, wag erroneous; and on this ground, a new trial should have been awarded, as moved for by the defendant below. For this error, the judgment is reversed, and the cause remanded, with directions that a new trial may be had, in conformity with this opinion.